UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:23-mc-00037 |
|  | : |  |
| Petitioner, | : | OPINION & ORDER |
|  | : | [Resolving Docs. 32, 35] |
| v. | : |  |
|  | : |  |
| EATON CORPORATION, | : |  |
|  | : |  |
| Respondent. | : |  |
|  | : |  |

---

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

On May 16, 2024, the Court granted the government's petition to enforce an IRS summons for certain foreign employee performance evaluations.  The government seeks the evaluations in an investigation of whether Eaton improperly priced purchases from its Irish affiliate to lower Eaton's United States taxes.

Now, Respondent Eaton Corporation (Eaton) moves to alter or amend the Court's judgment under Federal Rules of Civil Procedure 59(e) and 60(b)(1).  With its motion for reconsideration, Eaton argues that the Court mistakenly found that European data privacy law—the General Data Protection Regulation (GDPR)—did not forbid Eaton's production of the summonsed performance evaluations, and mistakenly found that the international comity factors favored enforcing the IRS summons even if the GDPR blocked production.

The Court finds that Eaton raises some persuasive arguments, but those arguments ultimately do not change the outcome.  While Eaton convinces the Court that the GDPR blocks Eaton from producing the employee evaluations, the Court still finds that the comity factors weigh in favor of enforcing the IRS summons.  Therefore, the Court **DENIES** Eaton's motion to alter or amend the judgment.

Case No. 1:23-mc-00037
GWIN, J.

## I.  BACKGROUND

This case arises from a federal income tax audit against Eaton.  With its tax audit, the IRS is investigating whether Eaton committed transfer pricing violations in the 2017–19 tax years.  That is, the IRS is investigating whether Eaton improperly lowered its United States tax burden by paying inflated royalties to Eaton's Irish affiliate, Eaton Intelligent Power Limited (Eaton Ireland), for the right to use certain intellectual property.

As part of its tax audit efforts, the IRS served administrative summons on Eaton.[1]  In relevant part, the summons requested performance evaluations for certain foreign employees working for Eaton Ireland.  According to the IRS, these performance evaluations will help the IRS determine how much the foreign employees contributed to the intellectual property in question.  The IRS says that it can then allocate the intellectual property's value between Eaton and Eaton Ireland by comparing the foreign employees' contributions to domestic employees' contributions.

After Eaton failed to comply with the summons, the government filed a petition to enforce the summons.[2]  The Court referred the petition to a Magistrate Judge.[3]  The Magistrate Judge mediated a settlement on all issues except those related to the foreign employee performance evaluations.[4]  On that issue, the parties submitted briefs,[5] and the Magistrate Judge recommended denying the government's petition.[6]

---

[1] Doc. 1-1, Ex. A.
[2] Doc. 1.
[3] Doc. 2.
[4] Docs. 9, 11.
[5] Docs. 12, 13, 16.
[6] Doc. 17.

Case No. 1:23-mc-00037
GWIN, J.

The government objected to the Magistrate Judge's recommendations.[7]  The Court sustained the government's objections and ordered Eaton to produce the foreign employee performance evaluations.[8]

In doing so, the Court found that the government had satisfied the low summons enforcement burden.  The Court also found that the GDPR did not prevent Eaton from producing the employee evaluations.  And even if the GDPR had prohibited Eaton's evaluation production, the Court found that the international comity factors nonetheless required summons enforcement.

Eaton then asked the Court to stay its decision pending an anticipated post-judgment motion and potential appeal.[9]  The Court stayed its decision pending Eaton's post-judgment motion but deferred ruling on whether the Court would give a stay pending appeal.[10]

Eaton subsequently filed its Rules 59(e) and 60(b)(1) post-judgment motion.  In the motion, Eaton claims that the Court did not properly analyze the GDPR and comity factors.

## II.   LEGAL STANDARD

When deciding a Rule 59(e) motion, courts "will not address new arguments or evidence that the moving party could have raised before the decision issued."[11]  As such, courts may only grant Rule 59(e) motions when there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."[12]  Here, Eaton argues clear legal error and new evidence.

---

[7] Doc. 18.
[8] Doc. 22.
[9] Doc. 24 at ¶ 3c.  To narrow the issues, Eaton agreed to produce performance evaluations for certain India-based employees.  *Id.* at ¶ 3d.  Here, Eaton challenges only production of evaluations for its Europe-based employees.
[10] Doc. 31.
[11] *Banister v. Davis*, 590 U.S. 504, 508 (2020).
[12] *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

Case No. 1:23-mc-00037
GWIN, J.

Rule 60(b)(1) motions are similar.  Rule 60(b)(1) allows district courts "to vacate a final judgment because of 'mistake, inadvertence, surprise, or excusable neglect.'"[13]  There are two circumstances that Rule 60(b)(1) applies to: "(1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order."[14]  Eaton argues that the second circumstance applies.

### III.    DISCUSSION

#### A.  Procedural Issues

The government raises two procedural issues.  First, Eaton attached an affidavit from a GDPR expert to its post-judgment motion.[15]  In its opposition, the government requested that the Court strike this affidavit because Eaton could and should have offered the affidavit earlier.  Nonetheless, the government provided its own GDPR-expert affidavit as well.[16]

While the government is correct that Eaton could have presented its GDPR-expert affidavit earlier, the affidavit is neither new evidence nor new argument.  Under Rule 44.1, Eaton's expert affidavit is being offered only to resolve legal questions about foreign law, so it is not factual evidence.[17]  The affidavit does not raise new arguments either because the affidavit addresses the same GDPR issues that the parties raised earlier and that the Court discussed in its earlier order granting the government's enforcement petition.

In any case, the government submitted its own expert affidavit, so the government is not prejudiced by Eaton's expert affidavit.  Therefore, the Court **DENIES** the request to strike.

---

[13] *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (quoting Fed. R. Civ. P. 60(b)(1)).

[14] *Reyes*, 307 F.3d at 455 (citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000)).

[15] Doc. 32-2.

[16] Doc. 33-1.

[17] Fed. R. Civ. P. 44.1; *cf. Wang v. Gen. Motors, LLC*, No. 18-cv-10347, 2018 WL 4501487, at *5 (E.D. Mich. Sept. 20, 2018) (testimony about foreign law is not considered evidence outside the scope of pleading motions).

Case No. 1:23-mc-00037
GWIN, J.

Second, the government moves for leave to file a sur-reply. However, sur-replies are disfavored and generally only permitted "when new submissions and/or arguments are included in a reply brief."[18] The government's proposed sur-reply responds to arguments that Eaton first raised in its opening post-judgment brief rather than any new arguments first raised on reply. Therefore, the Court **DENIES** the government's sur-reply motion.

### B. GDPR

Having resolved the procedural issues, the Court turns to Eaton's GDPR arguments. All agree that, unless a GDPR exception (known as a derogation) applies, the GDPR blocks Eaton from producing foreign employee performance evaluations. Where the parties disagree, and where the Court ruled in the government's favor, is that whether the GDPR's public interest derogation applies.

For the public interest derogation to apply, the requested document production must be (1) necessary or legally required and (2) based on important public interest grounds.[19]

The Court starts with the public interest element. In its earlier order, the Court held that a 1997 tax treaty between the United States and Ireland established that Ireland has a public interest in allowing information sharing between the two countries for income tax enforcement purposes.[20]

Eaton claims that the Court got it wrong. From Eaton's perspective, there is no public interest because the U.S.-Ireland tax treaty does not authorize the IRS summons in this case.

---

[18] *NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, 550 F. Supp. 3d 488, 499 (N.D. Ohio 2021) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).

[19] Eur. Data Prot. Bd., *Guidelines 2/2018 on Derogations of Article 49 Under Regulation 2016/679* at 10–11, https://www.edpb.europa.eu/sites/default/files/files/file1/edpb_guidelines_2_2018_derogations_en.pdf [hereinafter *GDPR Guidance*].

[20] Doc. 22 at 14–15.

Case No. 1:23-mc-00037
GWIN, J.

Eaton misses the point.  The public interest derogation does not incorporate any treaty's procedures.  Instead, the public interest derogation uses expansive language that allows parties to produce personal information whenever it "is necessary for important reasons of public interest."[21]  Public interest is a broad concept that extends beyond what a treaty may expressly authorize.  Had the European Union (EU) wanted to limit this derogation to apply when there is express authorization in a treaty or other law, the EU could have said so.

The EU's guidance reinforces this conclusion.  The guidance explains that public interests can "be *deduced* from EU law or the law of the member state."[22]  The guidance also states that treaties are an "*indicator* [for] the existence of a public interest."[23]  In other words, the public interest derogation does not require express treaty authorization or other law— public interests can be *inferred* based on a treaty's or law's contents, underlying principles, or goals.

The U.S.-Ireland tax treaty states that its goal is to "prevent[] fiscal evasion with respect to taxes on income."[24]  The tax treaty also contains provisions that allow for information sharing between the United States and Ireland.[25]  From this, the Court infers that Ireland has a public interest in sharing information with United States tax authorities to prevent international companies from improperly manipulating their tax burden.  That interest exists

---

[21] GDPR Art. 4(1)(d).
[22] *GDPR Guidance* 10 (emphasis added).
[23] *Id.* (emphasis added).
[24] *Convention Between the Government of the United States of America and the Government of Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains*, S. Treaty Doc. No. 105-31, 1997 WL 602448, at *4 (July 28, 1997).
[25] *Id.* at *27–28.

Case No. 1:23-mc-00037
GWIN, J.

even though the IRS did not bring its request for employee evaluations under the U.S.-Ireland

tax treaty.

Although Eaton fails to show that the Court's public interest analysis was wrong, Eaton

successfully argues that the Court's "necessary or legally required" analysis was mistaken.  In

its prior order, the Court found that Eaton was legally required to produce the requested

employee evaluations because the government had met its summons enforcement burden.[26]

However, the Court did not distinguish between the two separate entities involved in this

case: the U.S.-based Eaton and its Ireland-based affiliate, Eaton Ireland.

Eaton Ireland is the entity covered by the GDPR.  Therefore, Eaton Ireland is the entity

that the Court must analyze the public interest derogation for.  The IRS issued the summons

in this case to "Eaton Corporation and Includible Subsidiaries,"[27] not to Eaton Ireland.[28]  So

even though the Court found the IRS summons to be enforceable, the summons does not

legally obligate Eaton Ireland.[29]

Having concluded that Eaton Ireland is not legally required to turn over employee

evaluations, the Court considers whether the employee evaluations are necessary.  As the

EU's GDPR guidance explains, this requires "strict necessity."[30]

Nothing in this case suggests that the employee evaluations are strictly necessary for

the IRS's tax audit.  As the Court previously found, the employee evaluations are only slightly

relevant to transfer pricing.[31]  The IRS understandably wants contemporaneous documentary

---

[26] Doc. 22 at 13.
[27] Doc. 1-1 at PageID #: 9.
[28] Neither party directly addresses whether Eaton Ireland is an includible subsidiary of Eaton, but the parties' briefs suggest that Eaton Ireland is not such a subsidiary.
[29] The parties dispute whether the IRS has the power to issue binding summons to Eaton Ireland.  Because the IRS summons here did not target Eaton Ireland, the Court declines to address this dispute.
[30] *GDPR Guidance* 11.
[31] Doc. 22 at 17.

Case No. 1:23-mc-00037
GWIN, J.

evidence about what Eaton Ireland's employees were doing.  But the IRS can make do

without that evidence.[32]

So, the Court finds that the GDPR blocks Eaton Ireland (and therefore blocks Eaton)

from producing the requested employee evaluations.  The Court, however, must also

consider whether the evaluations should be produced after a comity analysis.

### C. Comity Analysis

Courts may enforce an IRS summons blocked by foreign law if the international

comity factors favor enforcement.  And in its prior order, the Court found that the comity

factors favored enforcement.  Eaton does not convince the Court otherwise.

Courts must weigh five comity factors:

> (1) the importance to the litigation of the documents or other
> information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would
> undermine important interests of the United States, or compliance with
> the request would undermine important interest of the state where the
> information is located.[33]

Eaton takes issue with how the Court weighed factors (4) and (5).  Eaton also claims that the

Court should have analyzed a sixth factor: good faith.

---

[32] Doc. 32-3 at ¶ 3 (explaining that the IRS was able to prepare a draft transfer pricing report without the employee performance evaluations at issue).

[33] *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987) (citation omitted).

Case No. 1:23-mc-00037
GWIN, J.

As before, the Court begins with factor (5) because it is the most important.[34]  Eaton's main argument is that the Court underappreciated the strength of the GDPR's privacy interest.[35]

To the contrary, the Court did not find that the GDPR's privacy interests are weak. The Court explained that the GDPR's privacy interests are not as strong in this case's specific circumstances because Ireland's tax cooperation interest, as evidenced by the U.S.-Ireland tax treaty, "significantly mitigate[s]" the GDPR's privacy interest.[36]

Eaton counters that the Court should not have looked to Ireland's interests but rather to the EU's interests because the GDPR is an EU law.  The distinction between Ireland and the EU is not important in this case, though.  The EU's own guidance incorporates its member states' interests into the GDPR public interest analysis.[37]  So, the relevant interests are the same whether the Court's comity analysis focuses on the EU or on Ireland as the appropriate sovereign.

Eaton also suggests that, because the GDPR's public interest derogation does not apply, the Court cannot find that Ireland's public tax cooperation interest mitigates against the GDPR's privacy interest.  Once again, Eaton takes too narrow of a view.  The comity analysis is separate from the GDPR analysis.  Indeed, comity is only relevant when the GDPR blocks summons enforcement.  So, to determine whether comity allows courts to enforce the summons despite the GDPR, courts are not limited to assessing whether a GDPR derogation expressly applies.

---

[34] Doc. 22 at 15 n.59 (collecting cases).
[35] Doc. 32-1 at 10–11.
[36] Doc. 22 at 16–17.
[37] *GDPR Guidance* 10 ("[T]he derogation only applies when it can also be deduced from EU law *or the law of the member state to which the controller is subject* that such data transfers are allowed for important public interest purposes including in the spirit of reciprocity for international cooperation.") (emphasis added)

- 9 -

Case No. 1:23-mc-00037
GWIN, J.

Had the government satisfied the public interest derogation, there would be *no* GDPR privacy interest. It follows, then, that partially satisfying the derogation reduces the GDPR privacy interest. That is what happened here. As the Court found above, the U.S.-Ireland tax treaty partially satisfies the public interest derogation, so Ireland's tax cooperation interest can reduce the GDPR's privacy interest.

The GDPR also explicitly recognizes that not all privacy interests are the same. For example, GDPR Article 9 creates especially restrictive rules protecting personal data about race, ethnicity, religion, and health, among other categories of particularly sensitive personal data. In this case, the Court has entered a protective order that allows for redaction of the most sensitive personal information,[38] so there is less of an interest in shielding the remaining unredacted portions of the employee evaluations from the IRS summons.

Eaton's last factor (5) argument is that the U.S.-Ireland tax treaty is not relevant to Ireland's sovereign interests because the tax treaty does not authorize the IRS summons here. The Court already rejected the same argument when evaluating whether the Court could infer a public interest from the tax treaty, and the Court rejects Eaton's argument again for the same reasons.

Therefore, the Court concludes that factor (5) still weighs strongly in favor of enforcement.

Turning to factor (4) (the availability of alternative information-gathering means) the Court finds that Eaton's arguments do not move the needle. Eaton correctly points out that courts evaluating this factor look for whether the alternative information-gathering means

---

[38] Doc. 30.

Case No. 1:23-mc-00037
GWIN, J.

will produce "substantially equivalent" information rather than if those alternative means are a "perfect substitute."

But Eaton overstates how permissive the substantial equivalence standard is.  Eaton's cites to *Richmark Corp. v. Timber Falling Consultants*[39] as authority for the substantial equivalence standard.  In turn, *Richmark* cites to *United States v. Vetco Inc.*[40] for that standard.  And according to *Vetco*, alternative information-gathering means that "may limit the information obtainable by the IRS" or that take more time and money than an IRS summons are not substantially equivalent.[41]

Eaton's proposed alternative means— for the IRS to interview employees rather than review those employees' performance evaluations—fails the *Vetco* test.  Because of fading memories, interviews may limit the information available to the IRS compared to contemporaneous documents.[42]  And interviewing will take significantly more time and greater resources than reviewing performance evaluations would.

Thus, factor (4) still favors enforcement.

Finally, Eaton argues that the Court should have also considered Eaton's good faith when the Court weighed the comity factors.  However, this is the first time Eaton has suggested that good faith is relevant to the comity analysis.  In briefing before the Magistrate

---

[39] 959 F.2d 1468, 1475 (9th Cir. 1992).

[40] 691 F.2d 1281, 1290 (9th Cir. 1981).

[41] 691 F.2d at 1290.  When district courts have applied the substantial equivalence standard, they generally use the Ninth Circuit's formulation.  *E.g.*, *In re Flint Water Cases*, No. 5:16-cv-10444, 2024 WL 2725040, at *3 (E.D. Mich. May 28, 2024) (citing *Richmark* and *Vetco*); *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 502 (N.D. Ill. 2021); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. MDL 19-2875, 2021 WL 3604808, at *5 (D.N.J. Aug. 12, 2021), *aff'd*, 2021 WL 6010575 (D.N.J. Dec. 20, 2021); *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, No. MDL 2592, 2016 WL 3923873, at *16 (E.D. La. July 21, 2016).

[42] Interviews and documentary evidence play different, albeit complementary, roles in investigations.  Documents help preserve information that might be lost to fading memories and provide a way for investigators to confirm the accuracy of a witness's testimony.  Meanwhile, testimony can provide greater context and fill in the gaps that are inevitably present in documentary evidence.  Because of these different roles, investigators cannot easily substitute one for the other.

Case No. 1:23-mc-00037
GWIN, J.

Judge, and in Eaton's objections before this Court, Eaton never raised good faith as a comity factor.  It is too late now to raise this new good-faith argument in post-judgment proceedings.

More fundamentally, it does not appear that good faith is a relevant comity factor. Although some circuits have added good faith into the comity analysis, the Supreme Court did not identify good faith as a relevant factor in *Société Nationale*.[43]  Nor has the Sixth Circuit ever endorsed good faith as a factor.  In fact, the Court has only been able to find one district court decision within the Sixth Circuit applying good faith as a comity factor.[44]

There also does not appear to be much reason to consider good faith when deciding whether to compel production despite foreign law.  While good faith can often *mitigate* the sanctions imposed for violating legal obligations, rarely does good faith *justify* noncompliance with legal obligations.[45]

In any case, even if the Court were to consider it, good faith would carry little weight in the Court's comity analysis.  Although the Court agrees that Eaton has acted in good faith throughout this process, for the reasons just stated, good faith provides little justification for Eaton not to comply with an IRS summons that the Court has found to be enforceable.

As such, the Court's comity analysis still weighs in favor of enforcing the IRS summons.

### D.  Stay Pending Appeal

Although the Court earlier indicated that it would allow Eaton to refile a motion for stay pending appeal once the Court decided Eaton's post-judgment motion, the Court finds

---

[43] 482 U.S. at 544 n.28.

[44] *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-cv-00024, 2019 WL 1261352, at *14 (W.D. Ky. Mar. 19, 2019).

[45] *Cf. Adams v. Penn Line Servs., Inc.*, 620 F. Supp. 2d 835, 838–39 (N.D. Ohio 2009) (good faith not a defense to Rule 11 sanctions).

Case No. 1:23-mc-00037
GWIN, J.

that further briefing from the parties would not be an efficient use of the parties' time and resources. The parties' existing stay briefing, coupled with the merits briefing on Eaton's post-judgment motion, is sufficient for the Court to decide the stay question.

When deciding whether to issue a stay pending appeal, courts balance four factors: (1) likelihood of prevailing on the merits of any appeal, (2) likelihood of irreparable harm absent a stay, (3) the prospect of harm to others if the court grants a stay, and (4) whether the public interest supports a stay.[46] The Court addresses the factors in order.

First, the Court finds that Eaton is not likely to succeed on appeal. For one, Eaton has already previewed some of its appeal arguments with its post-judgment motion, and the Court has not found those arguments convincing. Moreover, the standard of review for cases like this is the highly deferential "clear error" standard, making it less likely that the Circuit Court will reverse this Court's decision weighing the comity factors.[47]

Second, the Court finds that Eaton would be irreparably harmed because it would be forced to violate the GDPR. But the harm's magnitude is likely small.[48] Although Eaton references a recent billion-dollar GDPR fine against Meta Platforms Ireland Limited,[49] such a drastic penalty is unlikely here. Only a handful of employee evaluations are at issue, versus the systematic disclosure of millions of people's personal information in the Facebook example.

Eaton tries to call into question whether any GDPR fine will be reasonable here by referring to the complexity of calculating GDPR fines and by pointing to the maximum

---

[46] *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).
[47] *Byers v. U.S. Internal Revenue Serv.*, 963 F.3d 548, 552 (6th Cir. 2020) (citation omitted).
[48] *Griepentrog*, 945 F.2d at 154 (courts weighing the irreparable harm factor consider the "substantiality of the injury alleged").
[49] Doc. 34-1 at ¶¶ 10–11.

- 13 -

Case No. 1:23-mc-00037
GWIN, J.

possible fine.[50]  However, Eaton gives no reasons explaining why it believes a fine in this case could be disproportionately high.  In fact, Eaton acknowledges that punishment for violating the GDPR may be as little as a reprimand.[51]  Recall, the IRS seeks information on how much responsibility foreign employees had for developing the intellectual property later licensed to Eaton.  Absent specific reasons to believe that Eaton will receive a disproportionate fine, the Court expects that European authorities will act reasonably and proportionally.

Third, a stay would injure the IRS because it would hinder the IRS's tax audit.  And finally, the public interest in tax collection strongly supports denying a stay.[52]

Therefore, the Court **DENIES** Eaton's request for stay pending appeal.

### IV.    CONCLUSION

The Court **DENIES** Eaton's motion to alter or amend the judgment and **DENIES** a stay pending appeal.  Eaton shall produce the relevant employee performance evaluations to the government, in accordance with the protective order in this case, within **thirty (30) days** of this Order.

IT IS SO ORDERED.


Dated: August 19, 2024                              *s/      James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE

---

[50] *Id.* at ¶ 12; Doc. 32-2 at ¶ 19.
[51] Doc. 32-2 at ¶ 19.
[52] *Vetco,* 691 F.2d at 1289 ("There is a strong American interest in collecting taxes from and prosecuting tax fraud by its own nationals operating through foreign subsidiaries.").