Case No. 1:23-mc-00037
Gwin, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

———————————————————
                                                :
UNITED STATES OF AMERICA,   :   CASE NO. 1:23-mc-00037
                                                :
    Petitioner,                     :
v.                                             :   OPINION & ORDER
                                                :   [Resolving Doc. 47]
EATON CORPORATION,           :
                                                :
    Respondent.                   :
———————————————————  :

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Earlier in this case, the Court granted the government's petition to enforce an IRS summons issued to Respondent Eaton Corporation as part of a federal tax audit.[1] The resulting enforcement order required Eaton to produce the performance evaluations of certain employees at its Irish affiliate.[2] As a matter of comity, the Court held that Eaton needed to produce those evaluations even though a European Union (EU) law—the General Data Protection Regulation (GDPR)—prohibited Eaton from doing so.[3]

Eaton appealed the Court's enforcement order.[4] Following some appellate proceedings, the Sixth Circuit returned the case to this Court on a limited remand.[5] With its remand, the Circuit instructed the Court to review the relevant evaluations in camera.[6]

After conducting that review, the Court now concludes that certain employees' evaluations are wholly irrelevant to the IRS's audit and that Eaton need not produce those

---

[1] Doc. 22; *see also* Doc. 39.
[2] Doc. 22.
[3] Doc. 39.
[4] Doc. 41.
[5] Doc. 47.
[6] *Id.*

-1-

Case No. 1:23-mc-00037
Gwin, J.

evaluations. Regardless of where the other comity factors land, there is no good reason to require the production of irrelevant documents in violation of foreign law.

As for the remaining employees' evaluations, in camera review does not appreciably change the Court's earlier comity analysis.

For these reasons, the Court **AMENDS** its enforcement order to limit the scope of required productions to the IRS.

## I. BACKGROUND

This case stems from an IRS audit of Respondent Eaton's 2017–19 taxes. The audit seeks to investigate potential transfer pricing violations. Put differently, the audit seeks to investigate whether Eaton improperly transferred intellectual property rights to its Irish affiliate, and paid royalties to its Irish affiliate in connection with that transfer, in violation of U.S. tax code. Such actions raise tax concerns because they reduce Eaton's U.S. tax burden, where Eaton faces higher tax rates, while inflating Eaton's Irish tax burden, where Eaton faces lower tax rates.

As part of its investigation, the IRS summonsed the performance evaluations of various employees at both Eaton and its Irish affiliate. According to the IRS, these evaluations would help it assess how much Eaton (as opposed to its Irish affiliate) contributed to the intellectual property in question. As the argument goes, the more Eaton contributes, the more Eaton keeps its ownership interest in the intellectual property. In turn, the more ownership Eaton maintains, the less proper it would have been to transfer the intellectual property to Eaton's Irish affiliate.

In relevant part, Respondent Eaton resisted producing its European employee evaluations on the ground that doing so would violate the GDPR. The Court agreed that the

-2-

Case No. 1:23-mc-00037
Gwin, J.

GDPR blocked Eaton from producing those evaluations to the IRS.[7] But even when foreign law blocks production, U.S. courts can still order production if a comity analysis supports doing so. The Court found that comity supported production and enforced the IRS summons.

Eaton appealed[8] and simultaneously moved the Sixth Circuit for an enforcement stay. The Circuit granted a stay.[9] The Circuit then remanded the matter back to this Court "for the limited purposes of conducting an in camera review of the performance evaluations" to "assist the [Court's] comity analysis."[10] The Circuit also instructed this Court "to amend its order enforcing the IRS summons if and how it deems necessary."[11]

The Court has received the summonsed evaluations and conducted an in camera review. The Court now proceeds to discuss how that review affects its comity analysis and how it amends the enforcement order.

## II. DISCUSSION

A comity analysis requires courts to weigh five factors:

(1) Importance of the requested documents;
(2) Specificity of the discovery request;
(3) Whether the information originated in the United States;
(4) Availability of alternative means for securing information; and
(5) Relevant U.S. and foreign interests, including the extent to which ordering or not ordering production would undermine those interests.[12]

When the Court previously conducted its comity analysis, it found that factors (1) and (3) weighed against enforcement, factors (2) and (4) weighed in favor of enforcement, and

---

[7] Doc. 39.
[8] Doc. 41.
[9] Doc. 45.
[10] Doc. 47
[11] *Id.*
[12] The Court paraphrases the five factors identified in *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987).

-3-

Case No. 1:23-mc-00037
Gwin, J.

factor (5) weighed strongly in favor of enforcement.[13] For the most part, the Court's in camera review does not disturb this conclusion.

The in camera review affects only factors (1) and (5).

The Court begins with factor (5) because it is the most important factor.[14] As the Court held earlier, the United States has a powerful, "paramount interest" in tax collection and investigating tax avoidance.[15] The in camera review does not change this tax collection interest.

However, the in camera review does affect the EU's countervailing interest, embodied in the GDPR, in protecting its citizens' privacy. When reviewing the evaluations at issue, the Court found little in the way of sensitive information. There were no personal identification numbers, birthdates, addresses, or the like. Nor did the evaluations contain health information, allegations of misbehavior, or other personal details. The evaluations dealt almost exclusively with work assignments. The most sensitive information they contained was, for some employees, mildly negative performance assessments.

To be sure, the GDPR is broad, and it covers even the non-sensitive personal information here.[16] As the Court explained in a prior order, though, the GDPR recognizes that some personal information categories are more sensitive than others.[17] The Court's review shows that the information here is not particularly sensitive, confirming that the EU's

---

[13] Doc. 22 at 16–17; Doc. 39 at 8–11.
[14] *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992) (the "balance of national interests" is "the most important factor"); *see also* Doc. 22 at 15 n.59 (collecting cases).
[15] Doc. 22 at 16.
[16] *See In re Mercedes-Benz Emissions Litig.*, No. 16-cv-881, 2020 WL 487288, at *1 (D.N.J. Jan. 30, 2020) (the GDPR defines personal information as "any information relating to an identified or identifiable natural person") (quoting GDPR Art. 4(1)).
[17] Doc. 39 at 10.

-4-

Case No. 1:23-mc-00037
Gwin, J.

privacy interest is reduced in this situation. Thus, factor (5) weighs more strongly in favor of enforcement than the Court previously found.

Turning to factor (1), the Court previously determined that the performance evaluations are "not particularly important," weighing against enforcement.[18] After review, this finding remains unchanged. There is little room for this factor to shift further against enforcement. Even if review makes the evaluations seem less important, as long as they retain some relevance, factor (1) would only slightly shift further against enforcement.

It is a different matter if the evaluations have no relevance at all. Irrelevant documents would be useless to the IRS's investigation because they would add no value. No matter how strongly the other comity factors weigh in favor of enforcement, there is no reason to require Eaton to produce such documents when doing so would violate the GDPR.

On this point, the Court finds that the evaluations for Leona Farrell, Simon Mccann, and Carole Tyler (the Non-Technical Employees) have no relevance and should not be produced. These three Non-Technical Employees work in Human Resources, in Finance, and as an Executive Assistant respectively. They have no role in managing intellectual property or working on Eaton's technologies. So, there is no basis for enforcing the IRS summons as to the Non-Technical Employees' evaluations.

The evaluations for the remaining employees—Michele Berlingerio, Hugh Carr, Aoife Geraghty, Seán Harte, Engelbert Hetzmannseder, Janík Ludek, Mark Kelly, Keith Nolan, Eugene Ryan, and Om Tandon (the Technical Employees)—are relevant enough that the factor (1) analysis does not change much.

---

[18] *Id.* at 17.

-5-

Case No. 1:23-mc-00037
Gwin, J.

Each of these employees has at least some technical, engineering, or patent management role. Given that the IRS's audit focuses on an intellectual property transfer between Eaton and its Irish affiliate, it is likely that these employees' job responsibilities touch on the technology at issue.[19]

Admittedly, the evaluations are mostly general and make only marginal reference to specific intellectual property. And there is little record detail that identifies the specific intellectual property being investigated. As such, the Court cannot determine whether the Technical Employees' evaluations discuss that intellectual property or not. But the Court need not do so for its comity analysis. If an evaluation discusses the intellectual property, it supports an inference that the employee contributed to control and ownership of the intellectual property. If the evaluation does not, then it supports an inference that the employee did not contribute to ownership over the intellectual property even though the employee would have been expected to. Either result helps the IRS assess whether it is Eaton or its Irish affiliate that is responsible for and controls the intellectual property in question.

That said, the inferences that the IRS could draw from these evaluations are weak. The evaluations are very short—roughly four-to-five pages—and do not convey how much time or effort an employee spent on a project. Assessing the time and effort spent on the intellectual property, though, is crucial to determining the level of control and ownership being exerted.

---

[19] The IRS has identified these employees as playing relevant roles. Although Respondent Eaton disputes that the employees' evaluations are relevant, Eaton does not dispute that the employees' would be relevant as witnesses.

-6-

Case No. 1:23-mc-00037
Gwin, J.

The negative inference that can be drawn from an evaluation's silence about the intellectual property is even weaker. The evaluations are too short to list all that an employee worked on. Thus, it is hard to say with confidence that an evaluation's silence means that employee did not work on the intellectual property.

The weakness of these inferences shows that, although the Technical Employees' evaluations have some marginal relevance, the evaluations are less important than the Court originally thought. Therefore, factor (1) weighs more strongly against enforcement for those evaluations than the Court found in its previous orders.

This increase in factor (1)'s weight against enforcement is easily counterbalanced by the increase in factor (5)'s weight in favor of enforcement. That is especially so because factor (5) is the most important and is therefore entitled to greater weight than factor (1) to begin with. The result is that comity still favors enforcement as to the Technical Employees' evaluations.

### III. CONCLUSION

The Court **AMENDS** its enforcement order to exclude the Non-Technical Employees' evaluations. This means Respondent Eaton must produce the Technical Employees' evaluations to the government, but not the Non-Technical Employees' evaluations. Eaton may still redact the produced evaluations consistent with the Court's protective order.[20] If the Sixth Circuit affirms the Court's decision, Eaton shall produce the Technical Employees' evaluations upon expiration of the Circuit's stay.

IT IS SO ORDERED.

---

[20] Doc. 54.

Case No. 1:23-mc-00037
Gwin, J.

Dated:  May 12, 2025             *s/    James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE