Case No. 1:23-mc-00037
Gwin, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

_____
                                          :
UNITED STATES OF AMERICA,     :           CASE NO. 1:23-mc-00037
                                          :
        Petitioner,                  :
v.                                        :           OPINION & ORDER
                                          :           [Resolving Doc. 57]
EATON CORPORATION,           :
                                          :
        Respondent.                  :
_____          :

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Nearly two years ago, the government filed its petition to enforce an IRS summons

issued as part of an audit into Respondent Eaton Corporation's taxes.  The government's

request for documents was seemingly modest—just over forty employee performance

evaluations.[1]  After negotiations, the parties' dispute became narrower still, centering around

only twenty-five performance evaluations for seventeen foreign Eaton employees.[2]  Since

"summons enforcement proceedings are to be summary in nature," this boded well for

prospects of a quick and efficient resolution.[3]

        Such optimism proved unfounded.  Although the Court enforced the IRS summons

and gave judgment to the government one year ago, Eaton has repeatedly asked for

reconsideration since then.  Following the most recent reconsideration, the Court removed

three employees' evaluations from the scope of its summons enforcement order.[4]  That left

Eaton to produce just ten evaluations totaling forty-seven pages.

_____
[1] Doc. 1-1 at PageID #: 10–12.
[2] Doc. 12 at PageID #: 64.
[3] *United States v. Clarke*, 573 U.S. 248, 254 (2014) (internal quotation marks and citation omitted).
[4] Doc. 55.

Case No. 1:23-mc-00037
Gwin, J.

Apparently, that was not good enough for Eaton.  Eaton now asks the Court to go through each of those evaluations line-by-line to redact any material that Eaton says is not sufficiently relevant to the IRS's audit.  In other words, Eaton asks the Court to act like a contract attorney hired to conduct document review.  That is not the Court's role, so the Court **DENIES** Eaton's motion for reconsideration.[5]

## I.    BACKGROUND

This case grew out of a suspected tax evasion maneuver by Respondent Eaton.  Between 2017 and 2019, Eaton transferred certain intellectual property rights to its Irish affiliate.  Along with this transfer, Eaton began making royalty payments to its Irish affiliate.  This shifted Eaton's tax burden from the United States to Ireland.  And because Ireland has a lower corporate tax rate than the United States, this also had the obvious effect of lowering Eaton's overall tax burden.

Naturally, the IRS took notice.  Suspecting that Eaton may have been attempting to avoid U.S. taxes under the guise of an intercompany intellectual property transfer, the IRS launched an audit to determine if Eaton had complied with applicable tax law.

---

[5] The Court's jurisdiction to decide this motion is unclear.  While retaining its jurisdiction over Respondent Eaton's pending appeal, the Sixth Circuit issued a limited remand for the Court to conduct an in camera review of the performance evaluations in question.  Doc. 47.  The Court did so, entering an order that modified its prior judgment.  Doc. 55.  At that point, the Court entered an order terminating the limited remand and returning this case to the Circuit.  Doc. 56.  It was only after the Court filed its order relinquishing jurisdiction back to the Circuit that Respondent Eaton filed the instant motion for reconsideration.  Doc. 57.

Nothing in the Federal Rules of Appellate Procedure appears to address these circumstances, and the Court is aware of no precedent addressing this situation, either.  Since Eaton has asked the Circuit to delay accepting return of the limited remand until this Court rules on the current motion for reconsideration, and the Circuit has taken no affirmative action to accept return of the limited remand, the Court concludes that it has jurisdiction.  *See* 6th Cir. Doc. 41.  However, if jurisdiction is lacking, this Order should be construed as an indicative ruling under Federal Rule of Appellate Procedure 12.1.

-2-

Case No. 1:23-mc-00037
Gwin, J.

A central issue in the audit was the question of control: was it Eaton or its Irish affiliate who exercised actual authority over the relevant intellectual property?  If Eaton retained control, that could be a sign that the intellectual property transfer was a sham transaction designed to offshore profits and avoid U.S. taxes.

To probe this issue, the IRS summonsed the performance evaluations of certain Eaton employees.  These evaluations contain both the employees' and their managers' accounts of what the employees worked on and accomplished during the review period.  According to the government, those accounts could shed light on where key work on the relevant intellectual property was being done and by whom.

If the U.S.-based Eaton employees continued working on the intellectual property, then Eaton's claim that it had legitimately transferred the intellectual property to its Irish affiliate would be undermined.  Relatedly, if the Ireland-based Eaton employees did not work on the intellectual property, then Eaton's claim that it had legitimately transferred the intellectual property to its Irish affiliate would also be undermined.

The Court enforced the summons.[6]  Usually, this would lead parties in Eaton's position to appeal.  Had Eaton done so, all could have been resolved with just one more round of briefing.  Instead, Eaton chose a different path—three successive motions asking the Court to reconsider its decision:

1.  Eaton started by filing a Rule 59 motion.[7]

---

[6] Doc. 22.
[7] Doc. 32.

Case No. 1:23-mc-00037
Gwin, J.

2. Only when that failed[8] did Eaton appeal.[9]  Even then, Eaton was not yet done with district court litigation.  Eaton moved the Sixth Circuit for a limited remand to require this Court could conduct an in camera review of the evaluations.[10]  The Circuit granted that motion, effectively directing the Court to reconsider its prior ruling.[11]  The Court did so, and on reconsideration, it narrowed its summons enforcement order by excluding three employees' performance evaluations.[12]

3. Still dissatisfied, Eaton came back to the Court for a third time, raising yet another Rule 59 motion and asking for reconsideration of what the Court already reconsidered on remand.[13]  This time, Eaton asked the Court to deny summons enforcement altogether, or to further redact all parts of the performance evaluations deemed irrelevant.

The Court addresses this third reconsideration motion in the present Order.

## II.   DISCUSSION

As relevant, Rule 59(e) allows courts to reconsider final judgments to correct clear legal error or prevent manifest injustice.[14]  Eaton claims that Court clearly erred when conducting its international comity analysis, and that injustice occurred when the Court overlooked Eaton's request to redact irrelevant portions of the evaluations.  Neither claim is convincing.

## A.    International Comity

---

[8] Doc. 39.
[9] Doc. 41.
[10] 6th Cir. Doc. 33.
[11] Doc. 47.
[12] Doc. 55.
[13] Doc. 57.
[14] *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

Case No. 1:23-mc-00037
Gwin, J.

Respondent Eaton argues that it cannot produce the summonsed performance evaluations due to the General Data Protection Regulation (GDPR), a European blocking statute that limits the transfer of personal information to the United States.[15]  However, U.S. courts have "the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate [a foreign blocking statute]."[16]  Before ordering a party to act in ways that violate such a blocking statute, courts, however, should engage in a comity analysis.[17]

Comity in these circumstances requires a court to weigh five factors: (1) importance of the requested information; (2) specificity of the discovery request; (3) whether the requested information originated in the United States or abroad; (4) availability of alternative means to secure the information; and (5) the balance of the relevant countries' interests.[18]

Eaton primarily argues that the Court misapplied the fifth comity factor.  As Eaton's argument goes, because the summonsed performance evaluations have only "marginal relevance,"[19] the United States' interest in obtaining them must also be minimal.  While the United States generally has a "paramount interest in tax collection and investigating tax avoidance,"[20] Eaton says that the United States' interest is weak in this case.  In more general terms, Eaton is saying that the United States has a weaker interest whenever the documents being sought are not particularly important.

---

[15] Doc. 39 at PageID #: 317.
[16] *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987).
[17] *See id.* at 543–44 & nn.27–28.
[18] *Id.* at 544 n.28.
[19] Doc. 55 at PageID #: 370.
[20] *Id.* at PageID #: 367 (cleaned up); *see also Bull v. United States*, 295 U.S. 247, 259 (1935) ("[T]axes are the lifeblood of government."); *United States v. Vetco Inc.*, 691 F.2d 1281, 1288 (9th Cir. 1981) (IRS summonses serve a "pressing national function").

-5-

Case No. 1:23-mc-00037
Gwin, J.

The flaw with Eaton's argument is that it conflates the first comity factor (importance) with the fifth comity factor (countries' interests).  This results in double-counting, allowing the same "lack of importance" argument to weigh twice against enforcement.

More fundamentally, the United States' interest in tax collection and investigation is not limited to information that is demonstrably relevant.  Congress decided to grant the IRS broad summons authority, and the scope of that grant demonstrates how significant Congress thought the U.S. interest in tax collection to be.  Congress extended the IRS's summons authority to any information that "*may* be relevant."[21]  So long as the IRS has a good faith believe in information's "*potential* relevance," the IRS can summons that information even if it ultimately turns out to be fully irrelevant.[22]

If Congress thought actual relevance to be important, it could have easily used narrower language when granting the IRS summons authority.  Congress's choice of language reveals that, other than requiring a good faith belief in relevance, the United States' interest in tax enforcement and investigation is independent of "*actual*[] relevan[ce] in any technical, evidentiary sense."[23]

Although the Court found that the remaining evaluations have little apparent relevance—based on the limited and incomplete descriptions of the IRS audit currently in the record—those evaluations still satisfy the "may be relevant" standard due to the employees' connection to Eaton's intellectual property operations.[24]  That is sufficient to support the United States' strong interest.

---

[21] I.R.C. § 7602(a) (emphasis added).
[22] *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (emphasis in original); *see also Byers v. IRS*, 963 F.3d 548, 558 (6th Cir. 2020) (same) (quoting *Arthur Young*).
[23] *Arthur Young*, 465 U.S. at 814 (emphasis added).
[24] Doc. 55 PageID #: 368–69.

Case No. 1:23-mc-00037
Gwin, J.

Relatedly, Eaton argues that the Court gave too little weight to GDPR privacy interests when it found that the evaluations' lack of sensitive personal information reduced the privacy interest.  However, the Court was not blithely projecting its own views of sensitivity onto the GDPR.  The GDPR itself recognizes that certain categories of personal information are more sensitive and deserve more protection than others.[25]

The performance evaluations do not contain any of those "special categories" of personal information (e.g., health, political opinions, religion, union membership, sexual orientation).[26]  Even though the evaluations formally fall within the GDPR's broad definition of personal information, the work descriptions in those evaluations are substantively more like corporate data that can be transferred much more freely.  As such, the evaluations do not fall within the GDPR's strongest privacy interests.

The Court rejects Eaton's argument on the fifth comity factor.

That leaves Eaton's secondary argument about the fourth comity factor, the availability of alternative means to secure the information.  Eaton claims that the Court failed to reconsider on remand whether employee interviews would be an adequate substitute for the employee performance evaluations.

The Court did not overlook the fourth comity factor.  The Sixth Circuit's remand was limited.  The Circuit instructed the Court to conduct an in camera review of the performance evaluations to aid the Court's comity analysis.[27]  The in camera review allowed the Court to

---

[25] GDPR Art. 9.  This distinguishes the GDPR's privacy interest from the United States' tax collection and investigation interest.  Unlike the GDPR, which provides for different levels of privacy protections based on the personal information's sensitivity, the U.S. tax code does not provide different levels of summons authority based on the summonsed information's relevance.
[26] Id.
[27] Doc. 47.

-7-

Case No. 1:23-mc-00037
Gwin, J.

assess relevance.  But the Court's earlier conclusion that interviews were not an adequate substitute for the evaluations did not turn on relevance.  Rather, the Court's earlier conclusion depended on the difference in nature between live testimony and documentary evidence.[28]

The in camera review did not affect the Court's analysis of the fourth comity factor, so reconsideration of that factor was outside the scope of the limited remand.

In any case, Respondent Eaton's interview argument otherwise fails.  As the Court has already explained, live testimony serves a different purpose than contemporaneous documentation like the performance evaluations.[29]  Contemporaneous documents guard against failing memories and serve vital impeachment purposes in ways that live testimony simply cannot.  Indeed, one would probably be hard-pressed to find any competent attorney willing to forego document discovery simply because they have depositions available.

The Court rejects Eaton's interview argument as well.

## B.    Relevance Redactions

As a fallback, Respondent Eaton asks the Court to redact irrelevant portions of the performance evaluations.  The Court declines to do so.

To begin, Eaton has not identified any legal authority—whether under the Internal Revenue Code, case law, or comity principles—that requires the Court to make relevance redactions.

---

[28] Doc. 39 at PageID #: 320 & n.42
[29] *Id.*

-8-

Case No. 1:23-mc-00037
Gwin, J.

In addition, allowing relevance redactions would limit the IRS to viewing information deemed relevant by the courts.  That would effectively rewrite the tax code's "may be relevant" standard into "must be relevant."[30]

The Court is also ill-equipped to perform line-by-line redactions in this scenario.  The IRS summons at issue is only a small corner of the broader IRS tax audit.  The Court cannot meaningfully make relevance redactions without having more context on IRS audit's needs.  The IRS is best positioned to provide that context because it knows its audit much better than the Court ever could.  Yet, without being able to see the performance evaluations, the government cannot offer useful input.

The whole situation is a Catch-22, and it shows why in camera review should be used only "sparingly."[31]  Since in camera proceedings are ex parte in nature, they short circuit the typical adversarial process that courts rely on when making decisions.[32]

There is one other practical matter to consider.  This case involves only forty-seven pages of evaluations.  But disputes will not always be so narrow.  Requiring redactions could therefore bury the courts in hundreds or thousands of pages of documents for review.  That is an unworkable state of affairs, and it is certainly not the kind of "summary" proceeding that summons enforcement is supposed to be.[33]

The Court will not redact the performance evaluations for Eaton.

### III.    CONCLUSION

---

[30] I.R.C. § 7602(a).
[31] *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 544 (6th Cir. 2001).
[32] *United States v. Barnwell*, 477 F.3d 844, 853 (6th Cir. 2007) (quoting *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968)).
[33] *Clarke*, 573 U.S. at 254.

Case No. 1:23-mc-00037
Gwin, J.

Had Eaton simply proceeded with its appeal, Eaton would likely already have received the review of this Court's order that it seeks.  Instead, after multiple rounds of motion practice, appeal, limited remand, in camera review, and no shortage of billable hours, what does Eaton have to show for its time?  The scissoring out of just three employees' evaluations from the Court's summons enforcement order.

That is an astounding amount of effort to commit to what, on the surface, appears to be an insignificant dispute.  There are only forty-seven pages of material at issue.  And as the Court found on in camera review, none of those forty-seven pages seem—at least from the narrow view the Court has into the larger IRS audit—particularly damaging to Respondent Eaton, nor do they contain sensitive information.[34]

Eaton presumably knew this from the start.  After all, Eaton has long argued that the performance evaluations have minimal relevance to the IRS's audit.  Nonetheless, Eaton went all in, launching a full-scale campaign against enforcement of the IRS summons.  It is near impossible to understand the lengths Eaton has gone to avoid production.

Although Eaton has raised the specter that European regulators could issue fines,[35] the suggestion that it faces any significant fine is a stretch.  For one, the performance evaluations do not include "special categories" of personal data that receive enhanced GDPR protections.[36]

And while Eaton may technically violate the GDPR by complying with the summons and by producing a handful of pages of non-sensitive personal information to the

---

[34] Doc. 55 at PageID #: 367–70.
[35] Doc. 12 at PageID #: 70.
[36] GDPR Art. 9.

-10-

Case No. 1:23-mc-00037
Gwin, J.

government, it seems unlikely that European regulators would pursue such a minor violation. In fact, European regulators would surprise the Court if they issued anything more than a marginal fine, especially when Eaton only produced the evaluations to comply with a U.S. court order.[37]

So, either Eaton has nearly unlimited resources to spare, or there is some deeper significance to this summons dispute beyond the Court's comprehension.  Regardless, *judicial* resources are not unlimited, and Eaton's motions have not been a good use of those resources.

The Court **DENIES** Eaton's motion.


IT IS SO ORDERED.

Dated:  May 30, 2025                                    s/    *James S. Gwin*
                                                                        JAMES S. GWIN
                                                                        UNITED STATES DISTRICT JUDGE

---

[37] That is not to say that a U.S. court order excuses data transfers under the GDPR.  *See* Eur. Data Prot. Bd., *Guidelines 02/2024 on Article 48 GDPR*, https://www.edpb.europa.eu/system/files/2024-12/edpb_guidelines_202402_article48_en.pdf.  But a regulator surely would consider the fact that a data transfer was made under penalty of court order.

-11-